IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUMILLE FRANKLIN, *et al.,* | ) | CASE NO. 1:14 CV 1163 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MANSFIELD CITY SCHOOL DISTRICT, | ) | |
| et al., | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

## Introduction

Before me by referral[1] in this case by Jumille Franklin (Franklin) and her son Stanley

Brown, Jr. (Brown) asserting federal and state law claims of discrimination and defamation

against defendants Mansfield City School District (Mansfield) and Brian Garverick

(Garverick)[2] is a motion by both defendants for summary judgment under to Rule 56 of the

Federal Rule of Civil Procedure.[3] Franklin and Brown have responded in opposition to the

motion,[4] and the Mansfield has replied to that opposition.[5]

---

[1] The matter was originally referred to me for general pretrial supervision by United States Senior District Judge Lesley Wells. (ECF # 24). In a non-document order dated September 10, 2015, the case was transferred to United States District Judge John R. Adams.

[2] ECF # 19 (first amended complaint).

[3] ECF # 69.

[4] ECF # 83.

[5] ECF # 84.

For the reasons that follow, I will recommend that the defendant's motion be granted in part as to the claims asserted under federal law, and that the Court decline supplemental jurisdiction over the remaining state law claims.

## Facts

### A.    Underlying facts

The underlying facts relevant to an adjudication of the present motion are not complex.

At the center of this case is PLATO, an online, computer-based program that essentially offers students courses in various subjects.[6] Mansfield uses PLATO to help students earn or recover credits toward graduation in subjects where they may have been unsuccessful in doing so in more conventional educational settings.[7]

A student using PLATO is assigned an identification number and password, logs into PLATO, and then is first given a tutorial in the subject at issue, followed by a series of lessons, with the process culminating in a unit mastery test. If the student does not pass the mastery test, they must begin the process anew, starting with another tutorial and finishing with a different mastery test.[8] Significantly, PLATO is locked if a student does not pass the

---

[6] ECF # 83 (Franklin's brief) at 2 (citing record).

[7] ECF # 69 (Mansfield's brief) at 4 (citing record).

[8] *Id*. at 3.

initial test, and an instructor must unlock PLATO to permit a student to begin the process again.[9]

Mansfield initially used PLATO at two different locations - the Mansfield Integrated Learning Center (MILC) and Mansfield Senior High School (MSHS).[10] MILC is characterized as an alternative or non-traditional high school where instruction is by computer, while MSHS is a traditional high school.[11]

As extensively developed by the parties, PLATO students at MSHS were generally not permitted to use PLATO at home or at any time or location other than the ones authorized, and were further generally prohibited from taking the mastery tests out of sequence - a practice described as "jumping around" within the subject area,[12] while PLATO users at MILC were not subject to these restrictions.[13]

In 2014, the Mansfield school administration investigated how PLATO was used at MILC.[14] When early information revealed "some irregularities" with how PLATO was being used at MILC, a full, outside investigation was ordered.[15] During that process, some members

---

[9]ECF # 69 at 5.

[10]*Id.*

[11]ECF # 83 at 2.

[12]ECF # 69 at 5; ECF # 83 at 3.

[13]ECF # 83 at 5.

[14]ECF # 83 at 8-9.

[15]*Id.*

of the professional staff at MILC were placed on administrative leave, and superintendent Brian Garverick locked down PLATO at MILC.[16] In a decision central to this case, MILC students were required to access PLATO at MSHS, and were further required to adhere to the MSHS protocols for PLATO use, which, as noted, differed from the usage patterns in place at MILC.[17]

Brown was one of the MILC students required to access PLATO at MSHS as a result of the investigation.[18] While Brown alleges that he was locked out from accessing PLATO at MSHS after his transfer from MILC, thus preventing him from completing his course work in time to graduate,[19] Mansfield contends that Brown was able to log into PLATO at MSHS, subject to the MSHS protocols, but was locked out when he tried to "jump around" within a unit as he had formerly been able to do at MILC, and attributes Brown's inability to complete his PLATO assignments to Brown's failure to devote necessary time to complete his course work.[20]

What is undisputed is that Brown did not successfully complete the PLATO courses required for him to graduate on time with his MILC class in May, 2014.[21] However, Brown

---

[16]*Id*. at 9.

[17]ECF # 69 at 9-10.

[18]*Id*. at 10.

[19]ECF # 83 at 10-11.

[20]ECF # 69 at 10.

[21]ECF # 69 at 11; ECF # 83 at 12-13.

did enroll at Madison Local schools and then graduate in September, 2014.[22] Nonetheless, Brown maintains that his failure to graduate in May from Mansfield schools caused him to lose a soccer scholarship at one college, and further claims that other college soccer coaches stopped pursuing him to play at their institutions when he did not graduate on time.[23]

**B.     Claims**

Franklin and Brown assert four claims arising under federal law and two claims grounded in state law.

1.     Claim One - 42 U.S.C. § 1981

Franklin and Brown assert here that the actions of the defendants "disproportionately affect the African American citizenry," and these actions resulted in Brown "not being able to attend the Mansfield Senior High School" such that he "was unable to secure a high school diploma."[24] Thus, they maintain that both defendants violated 42 U.S.C. § 1981.[25]

2.      Claim Two - 42 U.S.C. § 1983 Due Process

Franklin and Brown in the second cause of action contend that the above-recited actions resulted in the District and Garverick denying Brown due process of law.[26]

---

[22]ECF # 69 at 11 (citing record).

[23]ECF # 83 at 13-14.

[24]ECF # 19 at ¶¶ 31, 32.

[25]*Id*. at ¶ 33.

[26]ECF # 19 at ¶¶ 34-36.

In their brief opposing the motion for summary judgment Franklin and Brown argue that because there is no issue as to whether Brown has a property right in his high school education, the only issue is what process was due him when he was deprived of that property right.[27] To that end, they maintain Brown was denied due process when: (1) was "locked out of PLATO for two months," and (2) was "finally transferred over to MSHS," where he was "only permitted to work  a few hours each day after regular school hours to complete [his] course work" thus making it "virtually impossible to graduate on time."[28]

3.      Claim Three - 42 U.S.C. § 1983 Equal Protection

Franklin and Brown argue that Brown was a "class of one" who was intentionally treated differently from all other person who were transferred to MSHS from MILC, and that there was no rational reason for such treatment.[29]

4.      Claim Four - state law claim for defamation per se

This claim alleges that the defendants falsely and publicly accused Brown of cheating, damaging his reputation and that of his family.[30]

5.      Claim Five - Title VI of the Civil Rights Act of 1964

This claim maintains that the defendants prevented Brown from graduating because of his race, and that the District was deliberately indifferent to a known racially hostile

---

[27]ECF # 83 at 16.

[28]*Id*. at 17.

[29]*Id*. at 23-24.

[30]ECF # 19 at ¶¶ 41-46.

environment when it deprived Brown of equal access to PLATO.[31] It further alleges that the District is liable for ratifying the misconduct of Garverick.[32]

6.      Claim Six - state law claim for intentional infliction of emotional distress

This cause of action contends that the defendants "engaged in, instigated and directed a course of extreme and outrageous conduct" with the intention of causing emotional distress to Franklin and Brown, or with reckless disregard of that probable result.[33]

## Analysis

### A.      Applicable standards

### 1.      Summary judgment

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[34] The moving party bears the burden of showing the absence of any such "genuine issue":

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[35]

---

[31]*Id*. at ¶¶ 48-57.

[32]*Id*. at ¶ 54.

[33]*Id*. at ¶¶ 59-60.

[34]Fed. R. Civ. P. 56(c).

[35]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[36] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[37] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[38]

The court should not grant summary judgment if a party who bears the burden of proof at trial does not establish an essential element of his case.[39] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[40] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[41]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party]

---

[36]*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[37]*Id.* at 252.

[38]*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[39]*McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[40]*Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[41]*Anderson*, 477 U.S. at 249-50 (citation omitted).

is entitled to a verdict."[42] But if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[43]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[44] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[45] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[46]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial

---

[42]*Id.* at 252.

[43]*March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

[44]*Anderson*, 477 U.S. at 256.

[45]*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[46]*BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

court in ruling on a motion for summary judgment.'"[47] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[48]

But the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[49]

As a general matter, the judge considering a motion for summary judgment need examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[50] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[51] The judge's sole function is to determine whether there

---

[47]*Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[48]*Id.* at 225-26 (citations omitted).

[49]*Id.* at 226 (citations omitted).

[50]*Anderson*, 477 U.S. at 248.

[51]*Id.* at 249.

-10-

is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[52]

In sum, proper summary judgment analysis entails:

the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[53]

## 2.  Supplemental jurisdiction

The Sixth Circuit has stated the well-known rubric for supplemental jurisdiction over state law claims as follows:

As restated by the Sixth Circuit in *Gamel v. City of Cincinnati*[54] the doctrine of supplemental jurisdiction as codified by 28 U.S.C. § 1367 "grants a district court broad discretion to decide whether to exercise jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same claim or controversy."[55] In determining whether to retain jurisdiction over state law claims after claims arising under a court's original jurisdiction have been dismissed, "a district court should consider and weigh several factors, including the 'values of judicial economy convenience, fairness, and comity.'[56] But "[w]hen all the federal claims are dismissed before trial, the balance of considerations usually

---

[52]*Id.*

[53]*Id.* at 250.

[54]*Gamel v. City of Cincinnati*, 625 F.3d 949 (6th Cir.2010)

[55]*Id.* at 951 (quoting 28 U.S.C. § 1367).

[56]*Id.* (Quoting *Carnegie-Mellon Univ. V. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L.Ed.2d 720 (1988)).

will point to dismissing the state law claims, or remanding them to state court if the action was removed."[57]

Under this rubric dismissal of state law claims that remain in the case after all of the federal claims dropout before trial is usually the preferred outcome.

### B.    Application of standards

### 1.    Summary judgment

The standard will be applied to each of the asserted federal law claims.

a.    42 U.S.C. § 1981.

It is well-settled that the District as a public entity[58] cannot be liable under Section 1981.[59] Likewise, Section 1981 cannot be used to sue Garverick in his official capacity[60] or in his individual capacity.[61]

Thus, I recommend granting both defendants summary judgment as to the first cause of action grounded on a purported violation of 42 U.S.C. § 1981.

b.    42 U.S.C. § 1983 - Due Process

---

[57]*Musson Theatrical, Inc. V. Federal Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir.1996)(citing *Carnegie-Mellon*, 484 U.S. at 350).

[58]Defendant District is a political subdivision in Ohio law. O.R.C. §2744.01(F).

[59]*Arendale v. City of Memphis*, 519 F.3d 587, 599 (6th Cir. 2008)(citation omitted); *Williams v. Richland Cnty. Children Services*, 861 F.Supp.2d 874, 879)(N.D. Ohio 2012)(citation omitted).

[60]*Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

[61]*McCormick v. Miami Univ.*, 693 F.3d 654, 660-61 (6th Cir. 2012)(citation omitted)(Keith, J.).

Due Process claims asserted under section 1983 are considered under two categories: violations of procedural due process and violations of substantive due process.[62]

Substantive due process protects "fundamental rights that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed."[63] As the Sixth Circuit has noted, the "first (and often last) issue in this area [of substantive due process] is the proper characterization of the individual's asserted right."[64] In that regard, both sides here assert that governmental actions that infringe a fundamental right are subject to strict scrutiny,[65] while otherwise such actions receive only a rational basis review, which requires only that the action be "rationally related to a legitimate state interest."[66]

But, as Judge Lioi noted in *Ferguson v. Van Horne*,[67] the strict scrutiny analysis standard only applies when the government action at issue is legislative.[68] "In cases, like here,

---

[62]*Midkiff v. Adams Cnty. Regional Water Dist.,* 409 F.3d 758, 762 (6th Cir. 2005)(citation omitted).

[63]*Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 500 (6th Cir. 2007)(quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), *overruled on other grounds* in *Benton v. Maryland*, 395 U.S. 784 (1967)).

[64]*Blau v. Fort Thomas Public School District, et al.,* 401 F.3d 381, 393 (6th Cir. 2005).

[65]*Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).

[66]*Id.* at 575.

[67]*Ferguson v. Van Horne*, 2011 WL 251116 (N.D. Ohio 2011).

[68]*Id.* at *6 (citation omitted).

-13-

where the complaint focuses on executive action, the proper standard for evaluating that action in the context of a claimed violation of substantive due process is whether it "shocks the conscience."[69]Only the most egregious official action may be said to shock the conscience.[70]Such conduct must be "so brutal and offensive that it [does] not comport with the traditional ideas of fair play and decency [...]."[71]What shocks the conscience depends on the "context of the situation and each case must be judged on its own specific facts."[72]

To establish a claim for a violation of procedural, as opposed to substantive, due process rights, a plaintiff must establish the existence of a constitutionally protected property or liberty interest of which they were deprived without appropriate process.[73]Once it is determined that due process applies, the question becomes what process is due.[74]At a minimum, due process requires that any deprivation of life, liberty or property be preceded by notice and an opportunity for a hearing appropriate to the nature of the case.[75]

---

[69]*Id*. at *7 (citation omitted).

[70]*Id*. (citation omitted).

[71]*Id*. (internal quotation and citation omitted; punctuation original).

[72]*Id*. (citation omitted).

[73]*Midkiff*, 409 F.3d at 762(citation omitted).

[74]*Goss v. Lopez,* 419 U.S. 565, 577 (1975)(citation omitted).

[75]*Id*. at 579 (citation omitted).

-14-

In this case, the defendants do not contest that Brown possessed a property right in his public school education by virtue of Ohio law.[76] But, the defendants further contend, there is no need to explore what process was due before depriving Brown of any right in this case because Brown was never suspended or otherwise deprived of a public school education.[77] At worst, they assert, when Brown was transferred to MSHS he was informed that he would need to follow the PLATO protocol at that facility and further informed that failure to follow the protocols would lock them out of certain PLATO programs.[78]  When Brown actually violated the protocols by not taking the test in proper order (*i.e*., by wanting to "jump around" as he could have done under the practices acceptable at MILC), Brown was told again of the consequences of such actions and was only then locked out of proceeding further on PLATO until he complied with the rules on sequential test taking.[79]

So understood, the issue here involves whether the change from MILC protocols for PLATO use to different protocols at MSHS constitutes of itself a due process violation. To that point, Brown's essential argument is that if the District had "correctly followed PLATO rules and regulations [in place] at MILC [and not the protocol at MSHS], Stanley Brown and the other African American students would have graduated on time."[80] It was, he argues, the

---

[76]ECF # 69 at 14 (citing *Goss v. Lopez*, 419 U.S. 565 (1975).

[77]*Id.* at 15.

[78]ECF # 84 at 4 (citing record).

[79]*Id*. (citing record).

[80]ECF # 83 at 17.

-15-

change in PLATO protocols to "a different set of rules," that left him short of graduation credits and without a means to make up the credits, and so "deprived Brown of his property interest and violated his due process rights."[81]

Brown argues that the change in protocols from MILC to MSHS is analogous to the loss of property rights that occurs when a student is suspended from school.[82] As with the situation of a suspension, Brown asserts that his liberty interest here flows from the damaging on his reputation among teachers and other students and further contends that he should have had "some kind of notice" and "some kind of hearing" before he was locked out of PLATO.[83]

*Gross*, which is exclusively relied on by Franklin and Brown, deals with the process required before choosing to impose the punitive measure of a suspension for any infraction of the rules. By contrast, the present matter fundamentally presents itself as a curriculum issue, which involves the purely pedagogical question of the timing and content of instruction and testing, and then the consequences of non-compliance.

In that regard, the Sixth Circuit has stated in the seminal, frequently quoted case of *Blau v. Fort Thomas Public School District*[84] that:

> While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child. Whether it is the school

---

[81]*Id*. at 18.

[82]*Id*. at 16-17 (citing *Goss*, 419 U.S. at 575).

[83]*Id*. at 17 (citing *Gross*, 419 U.S. at 579).

[84]*Blau v. Fort Thomas Public School District, et al.,* 401 F.3d 381 (6th Cir. 2005).

curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extra curricular activities offered at the school, or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."[85]

*Blau* was recently found to be controlling authority in the 2013 decision in *Bender v. Metropolitan Nashville Board of Education*.[86] In a situation analogous to the present case, Jeffrey Bender, an 18 year old student at the East Nashville Magnet School, was advised one day before the final exams that "quite a few items" were missing from his work folder and so he would receive a "D" grade.[87] Jeffrey's parents initially sought relief from the school authorities and, failing to obtain relief, sued the school district and various administrators claiming that the district violated procedural due process by not complying with its own policy on parental involvement and further that Jeffrey was denied substantive due process in not being able to attend the university of his choice due to the presence of the "D" grade on his record.[88]

The district court found first that no substantive due process violation was present because Jeffrey had no constitutional right to attend his choice of college, and because no

---

[85]*Id*. at 395-96 (emphasis original).

[86]*Bender v. Metropolitan Nashville Board of Education,* 2013 WL 3777197 (M.D. Tenn. July, 18, 2013).

[87]*Id*. at *1.

[88]*Id*. at *2.

constitutional right was implicated in the process of determining a child's grade.[89] Quoting

another district court, the *Bender* court stated:

> Is there a student who has not at some point in her academic career felt (as early as the first grade) that a grading system was unfair or that a particular teacher applied the system in an unfair manner? Especially in that instance where the student has received a grade she believes to be lower than deserved?[90]

*Bender* then concluded its substantive due process analysis as follows:

> The fact that the plaintiffs believe the grade their child received was unfair and unwarranted does not turn their claim into a federal constitutional violation. In short, parents have no fundamental interest in the grade their child receives in class, and no fundamental right under the United States Constitution to confer with the teacher about that grade.[91]

*Bender* likewise rejected the procedural due process claim that the district had failed

to follow its own parental communications policy. After first observing that the complaint

was not that the parents were unable to complain to administrators about the grade given, but

rather that the parents were unhappy with the decision made, the court held that "the mere

failure of a local entity to comply with its own procedures does not inevitably give rise to a

federal due-process claim."[92] Moreover, *Bender* continued, "[w]hile "meaningful

---

[89]*Id*. at *5 (citations omitted).

[90]*Id*. (quoting *Heenan v. Rhodes*, 757 F.Supp.2d 1229, 1241 (M.D. Ala. 2010).

[91]*Id*.

[92]*Id*. at *6.

-18-

communication between parents and teachers may be a laudable policy as a general matter, it is not required by the Due Process Clause of the United States Constitution."[93]

*Bender*'s analysis also applies here to both the procedural and substantive due process claims in this case. As to procedural due process, as noted above, the plaintiffs' claims are that Brown was deprived of a "right" to keep using PLATO under the MILC protocols while at MSHS, and that the communication about the new protocol at MSHS was flawed. But, just as in *Bender*, Franklin and Brown fail to establish any property right to use a particular teaching protocol such that due process is implicated in its change or removal. As *Blau* noted, there is no right to insist that subjects be taught a certain way or that tests be administered in any particular fashion. Further, and without passing on the quality of how the District is communicating with Franklin and Brown here, the plaintiffs can show no property right in receiving any particular form or timing of communications in this instance. While it may be axiomatic that more frequent, earlier, and more comprehensive communications are always to be preferred over lesser degrees of such qualities, it by no means follows that there is a constitutionally protected property interest in a certain amount and quality of communications between the school and a student and his parents.

Similarly, I recommend concluding that no substantive due process claim exists here. Again, Brown has stated no fundamental right to use PLATO on the terms employed at MILC, nor has Franklin established a fundamental right to insist that Brown be allowed to

---

[93]*Id.*

-19-

take his tests in any particular manner or to receive any particular level of communication about the curriculum.[94] Moreover, even if there were such rights, the defendants have acted in a manner rationally related to legitimate state interests by requiring that all students earn a minimum number of credits in order to graduate and that the credits be earned as the result of passing legitimate tests, properly administered according to school criteria.[95]

In the context of the applicable "shock the conscience" analysis, I recommend finding that nothing done by the defendants here was so egregiously wrong, or so brutal and offensive as to constitute a violation of substantive due process.

Thus, in sum, I recommend granting summary judgment to the defendants on all claims of due process raised under 42 U.S.C. § 1983.

c.      42 U.S.C. § 1983 - Equal Protection

To establish a violation of section 1983 on the basis of denial of equal protection, the plaintiff must ordinarily show that a state actor intentionally discriminated against him because of his membership in a protected class.[96]  But, the Supreme Court has recognized

---

[94]*Bender*, 2013 WL 3777197, at **6-7.

[95]*See, Owens v. Parrinello*, 365 F.Supp.2d 353, 359 (W.D.N.Y. 2005)(in analogous equal protection context, finding that schools have a rational interest in testing requirements for graduation). Again, if the district court adopts this recommendation, it is not necessary to examine the additional steps the District took to give students the chance to earn graduation credits at summer school and to graduate at an August ceremony, rather than to simply abandon failing students who could not earn the needed credits for a May graduation.

[96]*Ferguson*, 2011 WL 251116, at *7 (citation omitted).

-20-

that the Equal Protection Clause can also give rise to a cause of action for a "class of one."[97] Such a claim is not grounded on the plaintiff's membership in a particular class or group.[98] Rather, to present a claim for a "class of one,"a plaintiff must demonstrate that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[99]

Under that construct, the lack of a rational basis can be established in one of two ways: (1) the "class of one" plaintiff can "negative every conceivable basis which might support" the government action at issue;[100] or alternatively, (2) the "class of one" plaintiff may show that the challenged government action was motivated by animus or ill will against him.[101]

Under either approach, however, the initial showing of a "class of one" plaintiff must be that he was treated differently from others similarly situated.[102] This requires "evidence that the relevant comparison [individuals] are similarly situated in all relevant respects."[103]

---

[97]*Id.* (citations omitted).

[98]*Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012).

[99]*Ferguson,* 2011 WL 251116, at *7 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

[100]*Bower v. Mt. Sterling*, 44 Fed. Appx. 670, 677 (6th Cir. 2002)(citation omitted).

[101]*Id.* at 678.

[102]*Young v. Mahoning County,* 418 F.Supp.2d 948, 959 (N.D. Ohio 2005).

[103]*Id.* (citation omitted).

Here, there is some imprecision in the claim asserted by Franklin and Brown.[104] As the defendants observe, Brown and Franklin seem not to initially argue this count as a "class of one" claim but rather appear to assert that the equal protection violation consists in not treating all students enrolled in the PLATO program at MILC in 2014 the same as those students who were enrolled at MSHS during the same period.[105] But, Franklin and Brown also present this count as a "class of one" claim.[106] They assert that a violation is present because administrators intentionally treated Brown "differently from others similarly situated (i.e., the students who were enrolled at MSHS the whole year)," and "there is no rational basis for the difference in treatment."[107]

Unfortunately, Franklin and Brown, much like the plaintiff in *Ferguson*, have gotten ahead of themselves.[108] While Brown, who transferred to MSHS from MILC during the 2014

---

[104]I note the count was pled only by reference to all the prior facts recited in the amended complaint. ECF # 19 at ¶¶ 38-40. The arguments supporting the claim, and the underlying legal theory, only appear in the arguments advance in the plaintiffs' brief opposing the motion for summary judgment.

[105]*See, e.g.,* ECF # 83 (plaintiffs' opposition brief) at 22. ("Although MILC students graduated without incident in prior years, the MILC student in 2014 (who were predominately African American) were forced to abide by a completely different [PLATO] policy, without notice, *because of the animosity and ill-will toward the MILC program, administrators , and students*.")(emphasis added).

[106]ECF # 83 at 23 ("This case echoes ... all the other class-of-one equal protection claims, where a public entity, with no conceivable basis for its action other than animus or ill-will, comes down hard on some hapless person, denying him some property or liberty right, while permitting otherwise similarly situated persons 'unfettered enjoyment.'").

[107]*Id.* at 24.

[108]*Ferguson,* 2011 WL 251116 at *8.

-22-

school year, was clearly treated differently from students who attended MSHS from the beginning of 2014, there is no evidence that Brown was treated differently in "all material respects"[109] from the other students who were transferred from MILC to MSHS during 2014, all of whom were required to adhere to different PLATO protocols at MSHS than those in use at MILC.[110]  Moreover, the evidence is that Brown was not the only MSHS senior in 2014 who did not complete the required PLATO courses under MSHS protocols, nor was he the only 2014 senior without the necessary credits to graduate with the class in May.[111]

Thus, while Brown can arguably claim that various individual details of his experience with PLATO in 2014 were not the same as those of other transferees, without a showing that he was treated differently in *all* material respects from his fellow transferees, he cannot maintain a class of one claim for denial of equal protection. I recommend finding that no such evidence is present in the record.

Accordingly, I recommend granting summary judgment to the defendants on this count.[112]

---

[109]*Loesel v. City of Frankenmuth,* 692 F.3d 452, 462 (6th Cir. 2012).

[110]*See*, ECF # 69 at 22 (citing record). 12 seniors transferred from MILC to MSHS, of which five students (four African-American and one white used PLATO according to the MSHS protocols and so graduated on time. Brown, along with six other transfer students (four African-American, one white and one multi-racial) did not graduate on time in May of 2014.

[111]ECF # 69 at 11 (citing record).

[112]If the Court adopts this recommendation, it is not necessary to address defendant Garverick's argument that he is entitled to qualified immunity.

d.      42 U.S.C. § 2000d (Title VI).

Title VI prohibits discrimination on the basis of race, color, or national origin "under any program or activity receiving Federal financial assistance."[113] To establish a claim under this provision, a plaintiff must show that the program at issue acted with "intentional discrimination,"[114] which, in the case of a facially neutral policy that effects a protected class, is shown by proof that the policy was "promulgated or reaffirmed *because of*, not merely in spite of, its adverse impact on persons in the plaintiff's class."[115]

That said, the disparate impact of a facially neutral policy is "an important starting point" in determining the motivating factor behind its adoption.[116] As noted in *Almendares,* intentional discrimination is often established by circumstantial evidence such as disparate impact, history of the state action and the foreseeability and knowledge of the "discriminatory onus" to be placed on the complainants.[117]

---

[113]42 U.S.C § 2000d.

[114]*Alexander v. Sandoval*, 532 U.S. 275, 281 (2001).

[115]*Almendares v. Palmer,* 284 F.Supp.2d. 799, 805 (N.D. Ohio 2003)(quoting *Horner v. Kentucky High School Athletic Ass'n,* 43 F.3d 265, 276 (6th Cir. 1994)(quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979))(emphasis original).

[116]*Almendares*, 284 F.Supp.2d at 805 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266 (1979)).

[117]*Almendares*, 284 F.Supp.2d at 806 (citation omitted).

-24-

In addition, the proper defendant in a Title VI case is the entity receiving federal funds, not an individual.[118]

Here, the plaintiffs[119] assert that the seemingly neutral policy of requiring transferring MILC students to comply with the MSHS PLATO protocol had a disparate impact on African American students.[120]

The defendants argue that Franklin and Brown have done no more than assert a disparate effect of a facially neutral policy and so have not established that the policy was adopted because it was intended to disadvantage African American students.[121] That argument, however, does not deal with the authorities, cited above, holding that the disparate impact can be circumstantial evidence of discriminatory intent because "the impact of an official action is often probative of why the action was taken in the first place since persons usually intend the natural consequences of their actions."[122]

But, that said, Franklin and Brown do not even establish any disparate impact in this case. As noted above, even granting the fact that most of the MILC students that were effected by the rule changes attendant to their transfer to MSHS were African American (8

---

[118]*Jackson v. Katy Independent School Dist.*, 951 F.Supp. 1293,1298 (S.D. Texas 1996).

[119]I note that Franklin, as Brown's mother, has no standing herself to bring an action under Title VI, but may do so on behalf of her minor son. *Jackson*, 951 F.Supp. at 1298.

[120]ECF # 83 at 27.

[121]ECF # 84 at 14.

[122]*Reno v. Bossier Parish School Bd.,* 520 U.S. 471, 487 (1997).

-25-

out of 12), the majority of the transfer students who completed PLATO under the MSHS protocols and so graduated on time were African American (4 out of 5). Thus, while slightly more than half of the transfer students that could allegedly be negatively effected by the transfer in that they did not graduate on time (7 out of 12), the evidence shows that African American transfer students proportionately did better than the others with fully half of their number showing no negative effect and graduating on time (4 out of 8).

In this situation, Franklin and Brown have shown no authorities holding that an effect experienced by just half of a group can be described as circumstantial evidence of intentional discrimination when fully the other half experienced no such effect.

Because the plaintiffs have failed to even state a circumstantial case of intentional discrimination on the basis of disparate impact against African American students who transferred from MILC to MSHS during 2014, I recommend that the defendants be granted summary judgment on this cause of action concerning Title VI.

     e.     State law claims for defamation per se and intentional infliction of emotion distress

Plaintiffs allege that the defendants falsely and publicly accuse Brown of cheating, damaging his reputation and that of his family[123] and that the defendants "engaged in, instigated and directed a course of extreme and outrageous conduct" with the intention of causing emotional distress to Franklin and Brown, or with reckless disregard of that probable

---

[123]ECF #19 at ¶¶ 41-46.

result.[124]  If this Court grants summary judgment on the federal claims, only state law claims will remain.  As stated in *Gamel*, "in determining whether to retain jurisdiction over state-law claims after claims arising under a courts original jurisdiction have been dismissed, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'"[125]   "[W]ith regard to judicial economy, two consideration exist, whether the federal court has spent a substantial amount of time on the state law claim, and second, how much time and resources a state court must expend on work already completed by the federal court."[126]

In this case, the district court has expended minimal resources on the state law claims. There is no reason why it is more convenient or fair to have the state law claims proceed in this Court rather than the state court. In particular, any resolution of the defamation claims will entail either taking evidence on what was said, by whom and in what setting, something not present in the Rule 56 record.  In such a case,  "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."[127]

---

[124]ECF 19 at ¶¶ 59-60.

[125]*Gamel*, 625 F.3d 949, at 951 (Quoting *Carnegie-Mellon Univ. V. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L.Ed.2d 720 (1988)).

[126]*State of Tennessee ex rel Pierotti v. A Parcel of Real Property*, 937 F. Supp. 1296, 1305 (W.D. Tenn. 1996).

[127]*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996), *superseded by statute in* 28 U.S.C. § 1367(c)(3).

Therefore, "[w]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."[128]  Weighing the factors outlined in Gamel, I  recommend that this Court decline supplemental jurisdiction over these claims.

## Conclusion

For the reasons stated, I recommend defendants Mansfield City School District and Brian Garverick's motion for summary judgment should be granted as to the federal claims. As to the remaining state claims,  I recommend that this Court decline the continuing exercise of supplemental jurisdiction and the dismissal of the state law claims.

Dated: October 30, 2015              s/ William H. Baughman, Jr.
                                     United States Magistrate Judge

---

[128]*Ullmo  v.  Ohio  Turnpike  and  Infrastructure  Com'n*,  No.1:15cv822, 2015WL 5055867 at *8 (N.D. Ohio Aug. 25, 2015).